UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSE SHOMO,

                     Plaintiff,

      v.

STEWART T. ECKERT, *et al.*,

                  Defendants.
_____

**DECISION AND ORDER**

1:18-CV-00916 EAW

## INTRODUCTION

*Pro se* plaintiff Jose Shomo ("Plaintiff") alleges claims under the First and Eighth Amendments pursuant to 42 U.S.C. § 1983, as well as under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132, against twenty-eight defendants (collectively, "Defendants"). Pending before the Court are the following six motions: (1) Plaintiff's motion for injunctive relief (Dkt. 54); (2) Defendants' motion to dismiss Plaintiff's complaint as a discovery sanction or for lack of prosecution (Dkt. 60); (3) Defendants' motion to revoke Plaintiff's *in forma pauperis* ("IFP") status (Dkt. 63); (4) Plaintiff's cross-motion for a hearing regarding Defendants' motion to revoke his IFP status (Dkt. 66); (5) Plaintiff's second motion for injunctive relief (Dkt. 68); and (6) Defendants' motion to strike Plaintiff's filing at Docket 71 as an unauthorized and oversized sur-reply (Dkt. 72).

For the following reasons, Defendants' motion to revoke Plaintiff's IFP status and motion to strike his filing at Docket 71 are denied (Dkt. 63; Dkt. 72); Plaintiff's three

motions are denied (Dkt. 54; Dkt. 66; Dkt. 68); and Defendants' motion to dismiss Plaintiff's complaint is granted (Dkt. 60).

## **BACKGROUND**

Plaintiff filed his initial complaint on August 17, 2018.  (Dkt. 1).  He alleged violations of the First Amendment, Eighth Amendment, and the ADA for events that occurred while incarcerated at Wende Correctional Facility ("Wende") from 2015 to 2017.  (*See id.*).  Plaintiff moved for leave to proceed IFP (Dkt. 6), and upon screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court granted Plaintiff IFP status (*see* Dkt. 8 at 30).  The Court dismissed Plaintiff's ADA claim with prejudice, as well as his § 1983 claims against Defendants in their official capacities.  (*Id.*).  The Court concluded that many of Plaintiff's remaining claims must be dismissed without prejudice and granted him leave to amend his complaint.  (*Id.* at 30-31).

On January 13, 2020, Plaintiff moved for an extension of time to amend his complaint, which was granted.  (*See* Dkt. 9; Dkt. 10).  In a letter dated March 16, 2020, Plaintiff asked for the Court to intervene because he had been denied use of a typewriter at Fishkill Correctional Facility ("Fishkill").  (Dkt. 12).  The Court denied Plaintiff's request via text order because preliminary injunctive relief is only available to redress injuries related to the conduct at issue in the complaint, and Plaintiff's request for a typewriter at Fishkill was unrelated to the claims stemming from his incarceration at Wende.  (Dkt. 13).  Plaintiff never filed an amended complaint.

In January 2021, the Court referred this case to the Honorable Leslie G. Foschio, United States Magistrate Judge, for all pretrial matters excluding dispositive motions (Dkt.

22), and Defendants filed answers to Plaintiff's initial complaint (Dkt. 21; Dkt. 28).  Judge Foschio entered a scheduling order on March 25, 2021 (Dkt. 26), and soon thereafter, Plaintiff filed a motion for appointment of counsel, which was denied (Dkt. 29; Dkt. 34).

On March 2, 2022, Defendants filed a motion for an extension of time to complete discovery, asserting that Plaintiff had been transferred from Fishkill to Coxsackie Correctional Facility ("Coxsackie") in December 2021 but had failed to inform Judge Foschio of his transfer.  (*See* Dkt. 37-1 at ¶ 5).  Judge Foschio granted Defendants' motion and entered an amended scheduling order requiring discovery to be completed by June 30, 2022.  (Dkt. 40 at ¶ 1).  On June 30, 2022, Defendants filed a motion to compel discovery or, in the alternative, to extend the existing discovery deadlines, citing Plaintiff's failure to respond to their discovery requests.  (*See* Dkt. 41-1 at 1-2).  Plaintiff never responded to Defendants' motion, but Judge Foschio denied Defendants' motion to compel without prejudice (Dkt. 43), and entered a second amended scheduling order on August 10, 2022 (Dkt. 44).  The second amended scheduling order set a discovery deadline of November 30, 2022.  (*Id.* at ¶ 1).

On November 29, 2022, Defendants filed a second motion to compel discovery due to Plaintiff's failure to respond to any of their previous requests.  (*See* Dkt. 45-1 at 1-3).  Plaintiff again did not respond to Defendants' motion to compel, and on March 9, 2023, Defendants moved for a further extension of time to complete discovery and to hold the active case management order deadlines in abeyance.  (*See* Dkt. 49).  On March 30, 2023, Judge Foschio, in a written Decision and Order, granted Defendants' motion to compel. (Dkt. 51 at 4).  Judge Foschio ordered that Plaintiff respond to Defendants' discovery

requests no later than 45 days from the date of the Decision and Order, and following service of the discovery, that Plaintiff make himself available for a deposition. (*Id.*). Judge Foschio further advised Plaintiff that failure to comply could result in sanctions under Federal Rule of Civil Procedure 37(b)(2)(A), including dismissal of his complaint. (*Id.*). Finally, Judge Foschio instructed Plaintiff to update his mailing address with the Court pursuant to Local Rule of Civil Procedure 5.2(d). (*Id.*).

On April 14, 2023, Plaintiff filed a motion for an extension of time to complete discovery. (Dkt. 52). Judge Foschio granted Plaintiff's motion and issued a third amended scheduling order, and he further ordered that Plaintiff's responses to Defendants' discovery requests, as required by the March 30, 2023 Decision and Order, were required to be served no later than 60 days from May 5, 2023. (Dkt. 55; Dkt. 56).

On April 27, 2023, Plaintiff filed a motion for injunctive relief, the first of the six motions now before the Court. (*See* Dkt. 54). Plaintiff asserted that he had been transferred back to Wende on March 6, 2023, and that ever since, Defendants had not provided him with adequate access to the law library as required by New York's Department of Corrections and Community Supervision ("DOCCS") Directive 4483. (*Id.* at 1). Plaintiff further alleged that Defendants had prevented him from using his "personal typewriter" and that Defendants were obligated to provide him with the assistance of a person "trained in the law." (*Id.*). Defendants responded to Plaintiff's motion (Dkt. 58), and Plaintiff replied (Dkt. 59).

Several months later, on August 11, 2023, Defendants filed a motion to dismiss Plaintiff's complaint as a discovery sanction under Federal Rule of Civil Procedure

37(b)(2) or for lack of prosecution under Rule 41(b).  (*See* Dkt. 60-2 at 4-5).  Defendants expressed that "Plaintiff ha[d] taken no affirmative steps to further this litigation since the first case management order was issued nearly two and a half years ago" and "made no effort to take discovery or respond to discovery during that time."  (*Id.* at 6).  Defendants further stated that Plaintiff had "repeatedly failed to provide responses to the Demands, which have been outstanding for sixteen months."  (*Id.*).  On August 21, 2023, Plaintiff submitted a filing, docketed as an "Addendum," in which he acknowledged receipt of Defendants' motion to dismiss and purported to respond.  (*See* Dkt. 62 at 2, ¶ 1). Defendants replied.  (Dkt. 64).

On August 29, 2023, Defendants filed a motion to revoke Plaintiff's IFP status. (Dkt. 63).  Plaintiff, in turn, cross-moved for a hearing regarding the revocation of his IFP status (Dkt. 66), and Defendants responded (Dkt. 67).

On November 15, 2023, Plaintiff sent a letter informing the Court that he finally had completed his response to Defendants' motion to dismiss but "lack[ed] the funds in [his] inmate account" to mail his submission because it was over a hundred pages long. (Dkt. 68 at 1).  Plaintiff suggested that the Court "arrange" for the New York Assistant Attorney General ("AAG") assigned to the case to retrieve his papers and file them electronically on his behalf.  (*Id.* at 2).  The next day, Defendants submitted a letter objecting to Plaintiff's request for assistance, characterizing his proposed filing as a sur-reply.  (*See* Dkt. 69 at 1-2).  Plaintiff responded that he was "seeking to merely submit a proper response" to Defendants' motion to dismiss.  (Dkt. 70 at 1).

On December 14, 2023, Plaintiff filed his response in opposition to Defendants'
motion to dismiss and the motion to revoke his IFP status.  (Dkt. 71).  Defendants soon
after filed a motion to strike Plaintiff's filing as an unauthorized and oversized sur-reply in
opposition to their motion to revoke Plaintiff's IFP status.  (Dkt. 72).  Plaintiff responded
(Dkt. 74), and Defendants replied (Dkt. 75).

## DISCUSSION

### I.   Defendants' Motion to Revoke Plaintiff's IFP Status

The Court first addresses Defendants' motion to revoke Plaintiff's IFP status.  As
discussed below, Plaintiff did not accumulate three "strikes" before filing the present
lawsuit.  The Court therefore denies Defendants' motion (Dkt. 63) and also denies as moot
Plaintiff's motion for a hearing (Dkt. 66).

At the time this lawsuit was commenced, a party was required to pay a $350.00
filing fee, as well as a $52.00 administrative fee.  *See* 28 U.S.C. § 1914.  Of course, the
Court may grant a party leave to proceed IFP if it determines that the party is unable to pay
the filing fee.  *See* 28 U.S.C. § 1915.  Nonetheless, not all litigants may be granted leave
to proceed IFP.  Under the "three strikes rule" of the Prison Litigation Reform Act
("PLRA"), an incarcerated individual may not proceed IFP if they have brought three or
more lawsuits that have been dismissed as frivolous or for failure to state a claim:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil
> action or proceeding under this section if the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in any facility, brought an action
> or appeal in a court of the United States that was dismissed on the grounds
> that it is frivolous, malicious, or fails to state a claim upon which relief may
> be granted, unless the prisoner is under imminent danger of serious physical
> injury.

28 U.S.C. § 1915(g); *see Malik v. McGinnis*, 293 F.3d 559, 560 (2d Cir. 2002).

Thus, under § 1915(g), an incarcerated individual with three strikes may proceed IFP only if they can show they are "under imminent danger of serious physical injury." *Id.* "An imminent danger is not one that has dissipated by the time a complaint is filed; rather it must be one existing at the time the complaint is filed." *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010) (internal quotation marks and citations omitted).

Here, Defendants point to four cases and argue that Plaintiff accumulated more than three strikes before filing this lawsuit. (*See* Dkt. 63-8 at 4-5). In the first case, following the Northern District of New York's grant of summary judgment to the defendants, the Second Circuit dismissed Plaintiff's appeal for lacking an arguable basis in fact or law. (Dkt. 63-3 at 15); *see* Mandate, *Shomo v. New York*, No. 07-4162 (2d Cir. June 25, 2008) (Dkt. 24); *see also Shomo v. N.Y. Dep't of Corr. Servs.*, No. 9:04-CV-0910 (LEK/GHL), 2007 WL 2580509, at *22 (N.D.N.Y. Sept. 4, 2007). In the second case, the Second Circuit again dismissed Plaintiff's appeal for lacking an arguable basis in law or fact after the Northern District of New York granted summary judgment in favor of the defendants. (Dkt. 63-4 at 7); *see* Mandate, *Shomo v. Goord*, No. 07-4351 (2d Cir. Apr. 9, 2008) (Dkt. 15); *see also Shomo v. Goord*, No. 9:04-CV-00707 (LEK/DEP), 2007 WL 2693526, at *10 (N.D.N.Y. Sept. 11, 2007). In the third case, the Southern District of New York dismissed Plaintiff's complaint pursuant to the defendants' motion under Federal Rule of Civil Procedure 12(b)(6); only some of the claims were dismissed with prejudice, and the court allowed Plaintiff leave to re-plead a deliberate indifference claim against several physician

defendants.  (Dkt. 63-5); *see Shomo v. City of New York*, No. 03 Civ. 10213 (AKH), 2005 WL 756834, at *11-12 (S.D.N.Y. Apr. 4, 2005).  The fourth case is the grant of summary judgment by the Northern District of New York giving rise to the Second Circuit's dismissal of Plaintiff's appeal in the first potential strike.  (*See* Dkt. 63-8 at 5); *Shomo*, 2007 WL 2580509, at *22.

    The first two cases on which Defendants rely are clearly strikes.  "An appeal is frivolous when it 'lacks an arguable basis either in law or in fact.'"  *Tafari v. Hues*, 473 F.3d 440, 442 (2d Cir. 2007) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).  The Second Circuit explicitly dismissed Plaintiff's appeals from the Northern District of New York for frivolousness—one of the listed grounds in section 1915(g).  *See, e.g.*, *Chavis*, 618 F.3d at 167-69.  But the third and fourth cases are not strikes.

    In the case from the Southern District of New York, the court *sua sponte* gave Plaintiff leave to re-plead part of his complaint.  *See Shomo*, 2005 WL 756834, at *11-12.  "The three strikes provision specifically applies to 'an *action* . . . that was dismissed' on one of the enumerated grounds."  *Morehouse v. Vasques*, No. 17-CV-4836 (KMK), 2018 WL 4211320, at *4 (S.D.N.Y. Sept. 4, 2018) (emphasis in original) (quoting 28 U.S.C. § 1915(g)).  "In other words, a strike is derived from a district court's order of dismissal of the entire case, if not the resulting judgment itself."  *Id.*  Because the Southern District of New York did not dismiss Plaintiff's entire action, the case is not a strike.  *See Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 n.4 (2020) (stating that section 1915(g) "does not apply when a court gives a plaintiff leave to amend his complaint."); *Tafari v. Hues*, 539 F. Supp. 2d 694, 702 (S.D.N.Y. 2008) ("Given the Second Circuit precedent concerning

related PLRA provisions, we think a ruling that plaintiffs do not incur strikes for partial dismissals for reasons within section 1915(g) is consistent with the purpose and intent of the PLRA."); *cf. Griffin v. Carnes*, 72 F.4th 16, 19 (2d Cir. 2023) (confirming that a district court's dismissal of an entire action under Rule 12(b)(6), after which the plaintiff was not given leave to amend, constituted a strike under section 1915(g)).

In the fourth case, the Honorable George H. Lowe, United States Magistrate Judge, issued a report and recommendation adopted in full by the Honorable Lawrence E. Kahn, United States District Judge for the Northern District of New York. *See Shomo*, 2007 WL 2580509, at *1. Plaintiff had brought claims under the Eighth Amendment, the ADA, the Rehabilitative Act of 1973 ("RA"), 29 U.S.C. § 794, and 42 U.S.C. §§ 1981, 1984, 1985, 1986, and 2000d against two sets of defendants ("State Defendants" and "Corporate Defendants," respectively). *See id.*, 2007 WL 2580509, at *1, 16-17, 21-22. Judge Lowe recommended the dismissal of all of Plaintiff's claims against the State Defendants on strike grounds.[1] *See id.*, 2007 WL 2580509, at *5-17. Judge Lowe recommended the same as to all of Plaintiff's claims against the Corporate Defendants, except for Plaintiff's Eighth Amendment deliberate indifference claim. *Id.*, 2007 WL 2580509, at *17-22. Judge Lowe concluded that the Corporate Defendants were entitled to judgment as a matter of law on Plaintiff's Eighth Amendment deliberate indifference claim, not that Plaintiff had failed to allege any facts upon which relief could be granted. *See id.*, 2007 WL 2580509, at *18-

---

[1]     The Second Circuit recently confirmed that dismissals based either on *res judicata* or on alternative holdings may constitute strikes under the PLRA. *See Griffin v. Carnes*, 72 F.4th 16, 19 (2d Cir. 2023).

20.  As such, although "a summary judgment dismissal stating on its face that the dismissed action was frivolous, malicious, or failed to state a claim counts as a strike for purposes of the PLRA's three-strikes provision," *Bradshaw v. City of New York*, No. 18 CIV. 8215 (ER), 2019 WL 2502036, at *3 (S.D.N.Y. June 17, 2019) (internal quotation marks and citation omitted), this fourth case upon which Defendants rely cannot constitute a strike. *See Escalera v. Samaritan Vill.*, 938 F.3d 380, 382 (2d Cir. 2019) ("[A] prisoner's entire 'action or appeal' must be dismissed on a § 1915(g) ground to count as a strike under the PLRA.  Accordingly, mixed dismissals are not strikes under the PLRA.").

Ultimately, the Court agrees with Defendants' assertion that, based on the mandates issued by the Second Circuit in 2020 and 2021, Plaintiff has at least three strikes.  (Dkt. 63-1 at ¶ 10; Dkt. 63-7 at 1-2); *see* Mandate, *Shomo v. N.Y. Dep't of Corr. & Cmty. Supervision*, No. 20-583 (2d Cir. Sept. 24, 2020) (Dkt. 36); Mandate, *Shomo v. New York*, No. 20-2783 (2d Cir. Dec. 27, 2021) (Dkt. 72).  But the language of section 1915(g) only allows a plaintiff's IFP status to be revoked if the plaintiff accumulates three strikes before bringing their current action.  *See* 28 U.S.C. § 1915(g); *accord Abreu v. Brown*, 317 F. Supp. 3d 702, 707 (W.D.N.Y. 2018).  Here, Plaintiff only had two strikes before filing this lawsuit on August 17, 2018, and as such, Defendants' motion to revoke Plaintiff's IFP status is denied.  Plaintiff's motion for a hearing regarding the revocation of his IFP status is denied as moot.

## II.  **Plaintiff's Motions for Injunctive Relief**

The Court next addresses Plaintiff's two motions for injunctive relief.  (*See* Dkt. 54; Dkt. 68).  In the first motion, Plaintiff asserts that, since returning to Wende on March 6,

2023, he has not been given sufficient access to the law library or to "people to type legal papers" as required by DOCCS Directive 4483, and he seeks a hearing "on an application for an injunction" pursuant to Federal Rule of Civil Procedure 65. (Dkt. 54 at 1-2). In the second motion, Plaintiff requests that the Court arrange for the AAG assigned to this case to pick up Plaintiff's response to Defendants' motion to dismiss and file it for him. (Dkt. 68 at 1-2). The Court denies both motions.

"A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and "is one of the most drastic tools in the arsenal of judicial remedies," *Hanson Tr. PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (internal quotation marks and citation omitted). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks and citation omitted). To obtain a preliminary injunction under Rule 65(a), the moving party must generally show "(1) irreparable harm; (2) either a likelihood of success on the merits or both a serious question on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.,* 883 F.3d 32, 37 (2d Cir. 2018).

Plaintiff's requests for injunctive relief fail for at least two reasons. First, Plaintiff's motion for relief is not sufficiently related to the allegations contained in his underlying complaint. *See, e.g., Sanchez v. DOCS Medical Dep't*, No. 12-CV-141Sr., 2013 WL 4520021, at *4-5 (W.D.N.Y. Aug. 21, 2013). In his motion, Plaintiff does not point to any

specific actions taken by the defendants in this lawsuit that have prevented him from accessing Wende's law library or resources (*see* Dkt. 54 at 1-2), and "a court generally may not issue an order against a nonparty," *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988).  Simply put, Plaintiff does not explain who the Court should order to do what, so that Plaintiff receives the access he allegedly has been denied.

Second, Plaintiff has not shown any irreparable harm from his purported lack of access to Wende's law library and resources.  *See, e.g.*, *Taylor v. N.Y.C.*, 517 F. Supp. 3d 191, 194-95 (S.D.N.Y. 2021).  "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (internal quotation marks and citation omitted).  Since filing this motion for injunctive relief, Plaintiff has filed multiple typed submissions with the Court, including one that is forty pages in length.  (*See* Dkts. 59, 62, 66, 68, 70, 71, 74).  As such, Plaintiff's first motion for injunctive relief is denied.

Plaintiff's second motion for injunctive relief asks the Court to direct the AAG to retrieve his response to Defendants' motion to dismiss and file it on his behalf.  (*See* Dkt. 68 at 1-2).  While Plaintiff claims that DOCCS refused to advance him legal postage sufficient to mail his response, he again fails to point to specific action taken by the individual defendants in this case, and he ultimately was able to file his response with the Court.  (*See* Dkt. 71).  Plaintiff's second motion for injunctive relief is therefore denied as moot.

## III.   **Defendants' Motion to Strike**

Defendants seek to strike Plaintiff's filing at Docket 71 as an unauthorized and oversized sur-reply.   (*See* Dkt. 72-1 at 5-11).   The Court declines to find Plaintiff's submission as such and denies Defendants' motion.

Rule 7(a)(2)(C) of the Local Rules of Civil Procedure for the Western District of New York provides:

> Memoranda in support of or in opposition to any motion shall not exceed twenty-five (25) pages in length, and reply memoranda shall not exceed ten (10) pages in length.   Tables of contents and tables of authorities are not included in the page limitations.   A party seeking to exceed the page limit must make application by letter to the Judge hearing the motion, with copies to all counsel, at least seven (7) days before the date on which the memoranda must be filed.

Loc. R. Civ. P. 7(a)(2)(C).   The Local Rules further provide that "[a]bsent permission of the Judge hearing the motion, sur-reply papers are not permitted."   Loc. R. Civ. P. 7(a)(6). Ultimately, however, "whether to permit the filing of a sur-reply is entirely within the Court's discretion."   *Marseet v. Rochester Inst. of Tech.*, No. 20-CV-7096FPG, 2022 WL 2718509, at *1 (W.D.N.Y. July 13, 2022); *see generally United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 383, 384-85 (S.D.N.Y. 1975).

In this case, Defendants filed their motion to dismiss on August 11, 2023.   (Dkt. 60).   Plaintiff responded to Defendants' motion to dismiss on August 21, 2023.   (Dkt. 62). On August 29, 2023, Defendants filed their motion to revoke Plaintiff's IFP status.   (Dkt. 63).   Plaintiff then filed a cross-motion for a hearing regarding the revocation of his IFP status on September 13, 2023.   (Dkt. 66).   The Court construes Plaintiff's filing at Docket 71 to be his response, albeit late and oversized, to Defendants' motion to revoke his IFP

status.  *See, e.g.*, *Laboy v. Ontario Cnty.*, 56 F. Supp. 3d 255, 259 (W.D.N.Y. 2014) ("A

district court has discretion in deciding whether to strike a submission not in compliance

with a local rule.").  However, even if a sur-reply to the motion to dismiss, the Court in the

exercise of discretion declines to strike it.  Thus, Defendants' motion to strike is therefore

denied.

## IV.   **<u>Defendants' Motion to Dismiss</u>**

Lastly, the Court addresses Defendants' motion to dismiss Plaintiff's complaint as

a discovery sanction under Rule 37(b)(2) or for failure to prosecute under Rule 41(b).  (*See*

Dkt. 60).  For the reasons discussed below, Defendants' motion to dismiss is granted.

### A.   **Rule 37**

Rule 37(b) allows the court to sanction a party for failing to comply with an order

to provide or permit discovery, including dismissal of the action in whole or in part.  *See*

Fed. R. Civ. P. 37(b)(2)(A); *Friends of Animals Inc. v. U.S. Surgical Corp.*, 131 F.3d 332,

334 (2d Cir. 1997).  Sanctions under Rule 37 are intended to serve three purposes:

> First, they ensure that a party will not benefit from its own failure to comply.
> Second, they are specific deterrents and seek to obtain compliance with the
> particular order issued.  Third, they are intended to serve a general deterrent
> effect on the case at hand and on other litigation, provided that the party
> against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district

court has wide discretion in sanctioning a party for discovery abuses."  *Reilly v. Natwest*

*Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999); *see Design Strategy, Inc. v. Davis*, 469

F.3d 284, 294 (2d Cir. 2006).   In imposing Rule 37 sanctions, courts consider various

factors, including:

> (1) the willfulness of the non-compliant party or the reason for
> noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the
> period of noncompliance[;] and (4) whether the non-compliant party had
> been warned of the consequences of noncompliance.

*Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (internal quotation marks and

citation omitted).   "Although 'dismissal under [Rule 37] is a drastic remedy that should be

imposed only in extreme circumstances,' this severe sanction may well be warranted, even

in the case of *pro se* litigants, when, 'due to willfulness or bad faith,' they fail to comply

with discovery orders after being warned that noncompliance can result in dismissal."

*Proctor v. Poole*, 233 F.R.D. 323, 325 (W.D.N.Y. 2006) (internal citation omitted) (first

quoting *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986); and then quoting *Daval

Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991)); *see West v. Goodyear

Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

The Court has considered each of the above-mentioned factors and finds that

dismissal of Plaintiff's case is appropriate.   The Court does not reach this determination

lightly, but only after careful consideration of the record.   Turning first to the willfulness

of Plaintiff's non-compliance, he has refused to comply with Judge Foschio's March 30,

2023 Decision and Order, which clearly instructed Plaintiff that he was required to provide

all discovery responses and to thereafter make himself available for an oral deposition

within 45 days of March 30, 2023.   (*See* Dkt. 51 at 4).   Further, it is plain from other

documentation in the record, such as Plaintiff's own filings, that Plaintiff was aware  of

Judge Foschio's order, as well as Defendants' prior motions for extensions of time and to compel Plaintiff's participation in discovery. For example, following Judge Foschio's order on March 30, 2023, Plaintiff filed his own motion for an extension of time to complete discovery, stating that "[f]or the record . . . I did receive 'all' of this Court's correspondences—as well as adversary counsels'—however, due to the defendants [*sic*] 'oppressive' tactics, I was effectively 'stymied' from responding to those correspondences . . . ." (Dkt. 52 at 1). Judge Foschio ultimately granted Plaintiff's request for a further extension of time. (*See* Dkt. 55; Dkt. 56).

Despite his admitted awareness of Judge Foschio's March 30, 2023 discovery order and the subsequent extension of time, Plaintiff still has not responded to any of Defendants' discovery demands, including interrogatories and requests of admission, or made himself available for a deposition. (*See* Dkt. 60-1 at ¶¶ 4-16). In his "Addendum" filed in August of 2023, Plaintiff admits that "defendants have served various written demands on plaintiff in April 2022, with followup letters, and that plaintiff has yet to respond which forced defendants to seek to compel, twice." (Dkt. 62 at 2).

Plaintiff's statements that he was "stymied" from responding to correspondences, advancing the case, and engaging in discovery (*see* Dkt. 52 at 1; Dkt. 62 at 2-5) are contradicted by his voluminous filings with the Court since March 30, 2023, at least one of which exceeds 40 pages in length. (*See, e.g.*, Dkt. 54; Dkt. 59; Dkt. 62; Dkt. 66; Dkt. 68; Dkt. 70; Dkt. 71; Dkt. 74). Accordingly, Plaintiff's contention that he was not able to comply with court orders and respond to Defendants' discovery requests is just not credible

and not supported by the record.  Rather, it is apparent that Plaintiff has unilaterally elected to ignore his obligations to comply with Defendants' discovery demands.

Plaintiff's "Addendum" makes clear that he has not made and does not intend to make any serious effort to comply with Judge Foschio's March 30, 2023 discovery order. Plaintiff asserts that Defendant's motion is "meritless" because he "'HAS ALREADY' provided the documents demanded by Defendants" and "Defendants needed only review the 'Exhibits' 'attched [sic] to the Complaint.'"  (Dkt. 62 at 3-4).  Plaintiff further takes the position that "even if those documents were not attached" to the complaint, he lacks the funds to make the necessary copies, and accordingly should not be "burdened" by providing to Defendants documents that he claims they could retrieve themselves.  (*Id*. at 4).  In other words, despite having been expressly ordered by Judge Foschio to "provide all discovery responses requested by Defendants' discovery requests" (Dkt. 51 at 4), including interrogatories and requests for admission, Plaintiff has apparently decided that he has discharged his discovery obligation because he attached certain documents to his complaint.

Litigation does not work this way.  Plaintiff's actions demonstrate that his conduct was willful.  *See Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) ("[A] party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault." (internal quotation marks and citation omitted)), *reconsideration denied*, 285 F. Supp. 2d 331 (S.D.N.Y. 2002), *aff'd*, 93 F. App'x 328 (2d Cir. 2004).  Although Plaintiff is *pro se* and "may in general deserve more lenient treatment than those [litigants] represented by counsel," he is still obligated to comply with court

orders.  *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)

(explaining that *pro se* litigants have an obligation to comply with court orders, and

"[w]hen they flout that obligation they, like all litigants, must suffer the consequences of

their actions").  Accordingly, the first factor weighs in favor of dismissal.

The Court has also considered the efficacy of lesser sanctions, and concludes that

no other sanction other than dismissal is appropriate.  As explained above, Plaintiff has

demonstrated that he does not intend to comply with court orders.  Judge Foschio warned

Plaintiff on multiple occasions that his failure to comply with discovery orders could

warrant the imposition of sanctions, including dismissal.  (*See* Dkt. 51 at 4 ("Plaintiff is

further advised that Plaintiff's failure to comply fully with this Decision and Order may

result in sanctions pursuant to Fed.R.Civ.P. 37(b)(2)(A) including dismissal of this

action."); *see also* Dkt. 56 at 4 ("FAILURE TO COMPLY WITH ANY THE

FOREGOING MAY RESULT IN SANCTIONS PURSUANT TO FED.R.CIV.P.

37(b)(2), INCLUDING CIVIL CONTEMPT, AND ATTORNEYS FEES INCURRED

BECAUSE OF A PARTY'S OR AN ATTORNEY'S NON-COMPLIANCE.")).  These

warnings have not compelled Plaintiff to provide the required discovery responses.

Further, Plaintiff has previously ignored several attempts by Defendants to prompt him to

provide discovery responses, or to otherwise participate in discovery.  (*See, e.g.*, Dkt. 41;

Dkt. 45; Dkt. 45-2; *see also* Dkt. 60-1 at ¶ 6).  The parties are unable to move the case

forward towards resolution if Plaintiff refuses to abide by court orders, and he has

consistently demonstrated that he will not do so.  *See Embuscado v. DC Comics*, 347 F.

App'x 700, 701 (2d Cir. 2009) (finding that "deliberate and persistent noncompliance

rendered lesser sanctions inappropriate"). "Moreover, given Plaintiff's *in forma pauperis* status . . ., it is unrealistic to expect Plaintiff to have the financial means to pay [a monetary] sanction which, thus, is unlikely to deter future litigation misconduct." *Agosto v. Fischer*, No. 16-CV-00824A(F), 2019 WL 13259394, at *5 (W.D.N.Y. Mar. 28, 2019) (concluding that dismissal was warranted due to "Plaintiff's obdurate behavior in refusing to cooperate with discovery").

Based on the record before it, the Court is left with the firm conviction that some lesser sanction—such as exclusion of evidence—will not serve to convince Plaintiff that he must comply with court orders. Rather, Plaintiff would likely treat some other sanction with the same disregard he has given Judge Foschio's prior discovery orders, even after being granted an extension of time. Accordingly, this factor also weighs in favor of dismissal.

The duration of Plaintiff's non-compliance further weighs in favor of dismissal. The first scheduling order was issued on March 25, 2021, requiring discovery to be completed by March 2, 2022. (Dkt. 26 at ¶ 4). On March 2, 2022, after learning that Plaintiff had been transferred from Fishkill to Coxsackie, Defendants requested an extension of time to complete discovery, which was granted. (Dkt. 37; Dkt. 39). Defendants served Plaintiff with discovery demands on April 30, 2022 (*see* Dkt. 60-1 at ¶ 5), and therefore those discovery requests have been pending at this point for almost two years. In the interim, Defendants have filed two motions to compel, the latter of which was granted by Judge Foschio on March 30, 2023. (*See* Dkt. 51). Plaintiff's discovery responses were due by May 15, 2023. (*See* Dkt. 60-1 at ¶ 9). Despite these lengthy delays in moving the case

forward, Plaintiff still has not met any of his discovery obligations—and does not appear to have any intention of doing so—and as such, these lengthy delays also weigh in favor of dismissal. *See, e.g.*, *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009) (upholding district court's dismissal of *pro se* litigant's case where litigant continually failed to comply with court orders over a period of six months); *Dungan v. Donahue,* No. 12 CV 5139(ILG)(RLM), 2014 WL 2941240, at *4 (E.D.N.Y. June 30, 2014) ("It has been nearly four months since the Court expressly noted plaintiff's 'pattern of delaying the case, ignoring court orders, and refusing to provide discovery,' and six months since the Court first admonished plaintiff for failing to cooperate with defense counsel. . . .  Such a protracted refusal to comply justifies dismissal." (internal citations omitted)).

Finally, Plaintiff has been warned in four case scheduling orders that any failure to comply may result in sanctions pursuant to Rule 37(b)(2).  (*See* Dkt. 26 at 5; Dkt. 40 at 4; Dkt. 44 at 4; Dkt. 56 at 4).   These warnings were in all capital letters and located conspicuously at the end of the orders.  (*See id.*).  Further, Judge Foschio's order on March 30, 2023, explicitly stated that "Plaintiff is further advised that Plaintiff's failure to comply fully with this Decision and Order may result in sanctions pursuant to Fed.R.Civ.P. 37(b)(2)(A) including dismissal of this action."   (Dkt. 51 at 4 (emphasis in original)). Notwithstanding these warnings, Plaintiff still refuses to comply with Judge Foschio's order that he respond to Defendants' discovery demands.  Accordingly, this factor also weighs in favor of dismissal.

Having carefully considered each of the aforementioned factors and finding that each weighs in favor of dismissal, the Court concludes that dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 37(b)(2) is warranted.

## B.   Rule 41

Although the Court has concluded that dismissal is appropriate pursuant to Rule 37(b)(2), the Court also considers whether dismissal pursuant to Federal Rule of Civil Procedure 41(b) is warranted.  A court's determination of whether to dismiss under Rule 41(b) "is guided by similar factors" to those that govern under Rule 37, with dismissal under Rule 37 including "the additional factor of the willfulness of the noncompliant party or the reason for the noncompliance," *Henry F. v. Woodlick*, No. 13-CV-4261 (NGG)(RML), 2014 WL 5878122, at *6 (E.D.N.Y. Nov. 12, 2014) (internal quotation marks and citation omitted), and "there is little distinction whether the dismissal is technically made under Rule 41 or Rule 37," *Peters-Turnbull v. Bd. of Educ. of City of New York*, 7 F. App'x 107, 110 (2d Cir. 2001).

Rule 41(b) authorizes a district court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the] rules or a court order . . . ."  Fed. R. Civ. P. 41(b). "Although Rule 41(b) does not define what constitutes a failure to prosecute, '[i]t can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics.'"  *Cognotec Servs., Ltd. v. Morgan Guar. Trust, Co.*, No. 93 Civ. 4878 KTD, 1999 WL 627411, at *2 (S.D.N.Y. Aug. 18, 1999) (quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982)).  "Dilatory tactics 'may consist, for example, of groundless motions, repeated requests for continuances or persistent late

filings of court ordered papers.'"  *Id.*  While Rule 41 "refers to dismissal upon motion of a defendant, the Supreme Court has made it clear that a court has the inherent authority to dismiss an action *sua sponte*."  *Lopez v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 489, 491 (W.D.N.Y. 2015) (internal quotation marks and citation omitted).  "While a harsh remedy, the rule is intended to serve as a rarely employed, but useful, tool of judicial administration available to district courts in managing their specific cases and general caseload."  *Id.* (internal quotation marks and citation omitted).

Before dismissing a case under Rule 41(b), the district court must weigh five factors, many of which include the factors weighed by the court in assessing a Rule 37 dismissal:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (internal quotation marks and citation omitted).  "No single factor is generally dispositive."  *Id.*  Weighing the five factors listed above, the Court finds that the circumstances are "sufficiently extreme" to warrant dismissal for failure to prosecute.

As explained above in section IV(A), *supra*, factors one (the duration of the plaintiff's failure to comply with the court order), two (whether the plaintiff was on notice that failure to comply would result in dismissal), and five (whether the judge has adequately considered a sanction less drastic than dismissal), all weigh in favor of dismissal.  At the time Defendants filed their motion to dismiss Plaintiff's complaint, almost five months had

elapsed since Judge Foschio ordered Plaintiff to respond to Defendants' discovery demands, and the delays that occurred during that time were the result of Plaintiff's own conduct, *i.e.*, his motion for an extension of time to complete discovery and his first motion for injunctive relief. *See Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001) (explaining that in applying the first factor, the court should consider "(1) whether the failures to prosecute were those of the plaintiff; and (2) whether these failures were of significant duration"). Plaintiff was explicitly warned that his failure to comply could result in the dismissal of his case. (*See* Dkt. 51 at 4). And beforehand, Judge Foschio granted multiple extensions of time as a less drastic means of encouraging Plaintiff's participation in discovery, which Plaintiff ignored. *See, e.g.*, *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 26 (S.D.N.Y. 1996) (explaining that a sanction less drastic than dismissal would not be appropriate, as "plaintiff seems to have great difficulty complying with directions of the Court," which was made "apparent in his failure to answer the[] interrogatories," and "in his failure to comply with the Court's direction. . . ."). Accordingly, the Court considers whether the third and fourth factors—whether Defendants are likely to be prejudiced by further delay in the proceedings and a balancing of the Court's interest in managing its docket with Plaintiff's interest in receiving a fair chance to be heard—weigh in favor of dismissal.

The Court finds that Defendants are likely to be prejudiced by a further delay in the proceedings. *See Coats v. Dep't of Veteran Affairs*, 268 F. App'x 125, 127 (2d Cir. 2008) (concluding that "when a plaintiff has unreasonably delayed, prejudice to the defendants may be presumed"). Plaintiff filed this action over five years ago in August 2018.

Defendants served discovery demands April 2022, to which Plaintiff still has not responded.  Clearly, the passage of time will affect witness memories, and further delay would only exacerbate those issues. *See Georgiadis*, 167 F.R.D. at 25 (explaining that the plaintiff's failure to respond to interrogatories, which sought identification of possible witnesses, caused prejudice because "[t]he passage of time always threatens difficulty as memories fade," and "[g]iven the age of this case, that problem is severe already," and "[t]he additional delay that plaintiff has caused . . . can only make matters worse"). Further, Defendants have devoted significant time and resources ascertaining Plaintiff's various whereabouts, responding to his motions for injunctive relief, and obtaining the outstanding discovery, which could have been spent either moving this case towards a resolution or in addressing other matters.  In sum, the almost two-year delay results in a significant prejudice to Defendants, and therefore this factor also weighs in favor of dismissal.

The Court has also balanced its interest in managing its docket with Plaintiff's interest in receiving the chance to be heard.  Over the past several years, Plaintiff has had numerous opportunities to be heard.  (*See, e.g.*, Dkt. 9 (Plaintiff's motion for an extension of time to file an amended complaint); Dkt. 12 (Plaintiff's motion for injunctive relief regarding access to a typewriter at Fishkill); Dkt. 17 (Plaintiff's motion for alternative service); Dkt. 27 (Plaintiff's motion for appointment of counsel); Dkts. 32 and 33 (miscellaneous letters from Plaintiff); Dkt. 35 (Plaintiff's motion for reconsideration regarding the appointment of counsel); Dkt. 52 (Plaintiff's motion for an extension of time to complete discovery); Dkt. 54 (Plaintiff's motion for injunctive relief regarding access to

the law library resources at Wende); Dkt. 66 (Plaintiff's cross-motion for a hearing regarding the revocation of his IFP status); Dkt. 68 (Plaintiff's motion for filing assistance); Dkt. 70 (Plaintiff's letter to the Court regarding the filing of his response)). Plaintiff has also been able to adequately respond or reply to the motions currently before the Court. (*See* Dkt. 59; Dkt. 62; Dkt. 71; Dkt. 74). Still, however, Plaintiff has not responded to Defendants' interrogatories or requests for admission, and he instead continues to focus on the validity of his physical ailments and Defendants' alleged attempts to prevent his participation in this litigation. (*See, e.g.*, Dkt. 71 at ¶¶ 55-56 ("Given this body of evidence, it should be apparent that DOCCS is playing some type of 'twisted game' with the courts [*sic*] and plaintiff's health. . . . To this end, it is respectfully submitted, that, it is DOCCS who should be 'offensively estopped' from now raising any issue regarding plaintiff's status as a quadriplegic; however, if there is 'any' doubt left a hearing w[ith] further expert testimony could shine light.")).

Importantly, Plaintiff is not an inexperienced first-time litigant. In 2007, the Northern District of New York revoked Plaintiff's special status as a *pro se* civil rights litigant, finding that he had filed "at least 10 other federal and state court actions and appeals . . . involv[ing] claims of torts or civil rights violations arising from the conditions of his imprisonment." *Shomo*, 2007 WL 2580509, at *4. And Plaintiff has only continued to gain experience. (*See* Dkt. 63-1 at ¶ 10; Dkt. 63-7). Given this background, the Court is convinced that Plaintiff is purposefully avoiding his discovery obligations as a litigation tactic. In other words, at this point in the case, Plaintiff has been afforded ample opportunity to be heard, and that must yield to the Court's interest in managing its docket,

- 25 -

particularly considering that Plaintiff has demonstrated—time and again—that he will not comply with court orders.  *See Georgiadis*, 167 F.R.D. at 25 ("[I]n the circumstances of this case, the Court's interest in managing its docket, after all of the difficulties caused by plaintiff in this case, now outweighs plaintiff's interest in being heard on the merits."). Accordingly, this factor also weighs in favor of dismissal.

Having carefully considered the aforementioned factors and concluding that each weighs in favor of dismissal of Plaintiff's case, the Court concludes that dismissal is alternatively warranted under Federal Rule of Civil Procedure 41(b).

## CONCLUSION

Accordingly, for the reasons stated above, Defendants' motion to revoke Plaintiff's IFP status (Dkt. 63) and motion to strike Plaintiff's filing at Docket 71 as an unauthorized and oversized sur-reply (Dkt. 72) are denied.  Plaintiff's motions for injunctive relief (Dkt. 54; Dkt. 68) and cross-motion for a hearing regarding the revocation of his IFP status (Dkt. 66) are denied.  Defendants' motion to dismiss (Dkt. 60) is granted.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 14, 2024
            Rochester, New York

- 26 -